UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

Stephen L. Phelps,                                      Case No.:  6:23-bk-05281-TPG

         Debtor.                                         Chapter 7

_____/


Mary Ida Townson, United States Trustee
for Region 21,

         Plaintiff,
                                                        Adv. Pro. No.: 6:24-ap-_____-TPG
v.

Stephen L. Phelps,

         Defendant.

_____/


**UNITED STATES TRUSTEE'S COMPLAINT**
**OBJECTING TO ENTRY OF DISCHARGE UNDER 11 U.S.C. § 727**

Mary Ida Townson, United States Trustee for Region 21 ("United States Trustee" or

"Plaintiff"), by and through the undersigned counsel, files this complaint objecting to an entry of

Stephen L. Phelp's ("Defendant") discharge pursuant to 11 U.S.C. §§ 727(a)(3), (a)(4)(A),

(a)(4)(D), (a)(5), and (a)(11).  The Defendant's objectionable acts consist of (i) failure to produce

adequate personal and business tax returns for 2021, 2022, and 2023 to both the Plaintiff and

chapter 7 trustee; (ii) failure to keep records that accounts for the disposition of $20,434.28 in

ATM cash withdrawals made within the year of filing; (iii) failure to provide records to account

for Defendant's post-petition cash-only lifestyle; (iv) failure to satisfactorily explain the loss of

$20,434.28 of ATM cash withdrawals; (v) providing false testimony regarding when certain tax

returns will be filed; (vi) omitting from his schedules certain ownership interests in an undisclosed

business he had on the petition date; and (vii) failure to complete the required post-petition debtor-education course.  In support of this complaint, the United States Trustee alleges:

## I.   <u>JURISDICTION AND VENUE</u>

1.    This adversary proceeding arises out of, and relates to, the Defendant's chapter 7 bankruptcy case docketed as case number 6:23-bk-05281-TPG (the "<u>Main Case</u>") filed in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division on December 15, 2023, pending before this Court.[1]

2.    This is an adversary proceeding in which the Plaintiff seeks the denial of the Defendant's discharge, pursuant to 11 U.S.C. § 727 and Fed. R. Bankr. P. 7001(4).

3.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 727.

4.    This matter is a core proceeding pursuant to 28 U.S.C. §§ 151 and 157(b)(2)(J).

5.    Venue is proper under 28 U.S.C. § 1409 and Local Rule 1071-1 of the United States Bankruptcy Court for the Middle District of Florida in the Orlando Division.

## II.    <u>PARTIES</u>

6.    Plaintiff Mary Ida Townson is the duly appointed United States Trustee for Region 21, which includes the Middle District of Florida.

7.    Plaintiff has standing to bring this action, pursuant to 11 U.S.C. §§ 307 and 727(c)(1).

8.    Defendant Stephen L. Phelps is the Debtor in the above-captioned case and is an individual who resides at 37245 County Road 439 Eustis, FL 32736 located in Lake County, Florida.

---

[1] All docket entries cited to herein are docket entries filed in the Main Case.

### III.   GENERAL ALLEGATIONS

**A. Procedural History**

9.   On December 15, 2023 ("Petition Date"), the Defendant filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code (Doc. No. 1) (the "Petition").

10.   The Petition, the original schedules, statements, and amendments thereof were all signed by the Defendant under penalties of perjury (Doc. Nos. 9, 10, 11, 18, 19, and 21).

11.   On December 18, 2023, Richard B. Webber was appointed as the interim chapter 7 trustee (the "Trustee") and continues to serve in that capacity (Doc. No. 5).

12.   The Trustee held and concluded a Section 341(a) meeting of creditors in this case on February 1, 2024.

13.   The Plaintiff examined the Defendant under oath pursuant to Federal Rules of Bankruptcy Procedure 2004 ("Rule 2004") on March 26, 2024, April 23, 2024, and October 24, 2024 (Doc. Nos. 45 and 92) ("2004 Notices").

14.   The Trustee crossed noticed Plaintiff's 2004 Notices and was an active participant at each examination (Doc. Nos. 47 and 97) ("2004 Cross Notices").  The Trustee made an additional request for specific documents of the Defendant under Rule 2004 (Doc. No. 72).

15.   On July 5, 2024, Defendant filed a written responses to Plaintiff's 2004 notice (Doc. No. 84) ("Response") and Trustee's 2004 Cross Notices (Doc. No. 83).

### IV.   FACTUAL ALLEGATIONS

**A. Defendant's Failure to Maintain Adequate Personal and Business Tax Records for 2021, 2022, and 2023**

**i.   2004 Examination Testimony**

16.   Within Plaintiff's 2004 Notices, Plaintiff requested, among other things, copies of

Defendant's delinquent 2021, 2022, and 2023 individual and business tax returns ("Delinquent Returns") (Doc. Nos. 45 and 92).

17.   The Trustee, within the 2004 Cross Notices, incorporated the same requests made by Plaintiff, including requests for the Delinquent Returns, by requesting copies of all documents produced to Plaintiff (Doc. Nos. 47 and 97).

18.   Within the Response, Defendant affirmatively states that "[t]he [Defendant] has not filed tax returns for 2021, 2022, and 2023."  (Doc. No. 84 at 4).

19.   During Defendant's 2004 examination held by Plaintiff on March 26, 2024, Plaintiff asked Defendant if he had filed Delinquent Returns and Defendant confirmed he did not and did not have any plans to file them.

20.   During Defendant's second 2004 examination held on April 23, 2024, Plaintiff asked Defendant regarding the status of the Delinquent Returns to which Defendant stated that they would be filed within "the next few weeks."

21.   At the Defendant's 2004 examination held on October 24, 2024, Defendant confirmed the Delinquent Returns were not filed.

22.   To date, the Defendant has not produced copies of the Delinquent Returns to the Plaintiff.

23.   Upon information and belief, the Defendant has not produced the Delinquent Returns to the Trustee.

24.   Upon information and belief, the Defendant has not filed the Delinquent Returns with the Internal Revenue Service.

### ii.   Defendant's entities

25.   On Schedules A/B, the Defendant lists the following entities the Defendant had an

ownership interest in on the Petition Date:

> **19.** **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
>
> ☐ No
> ☑ Yes. Give specific information about them...........
>
> | Name of entity: | % of ownership: | |
> |---|---|---|
> | Jack's Garage, LLC | 100 % | $ 0.00 |
> | FSD Hot Rod Ranch, LLC | 100 % | $ 0.00 |
> | Father, Son, & Daughter, LLC | 100 % | $ 0.00 |

(Doc. No. 18 at 6) (the "Entities").

   26.  Jack's Garage, LLC, a Florida Limited Liability Company, was purchased by the Defendant in late 2022.  According to the Defendant, this entity repaired cars that Defendant bought and sold.

   27.  FSD Hot Rod Ranch, LLC ("FSD"), a Florida Limited Liability Company, was owned by the Defendant since March 1, 2021, and became administratively dissolved on September 27, 2024.  According to the Defendant, this entity bought and sold classic cars from and to antique automobile enthusiasts and collectors.

   28.  Father, Son, Daughter, LLC, a Florida Limited Liability Company, was owned by the Defendant since December 22, 2015, and became administratively dissolved on September 27, 2024.

   29.  The Defendant operated FSD and Father, Son, Daughter, LLC in 2021, 2022, and 2023.

   30.  The Defendant operated Jack's Garage, LLC for a portion of 2022 and 2023.

   31.  The Defendant has not filed tax returns for the Entities for the portions they were in operation for 2021, 2022, and 2023.

   32.  The Defendant's primary means of income and business revenue for 2021, 2022, and 2023 was the operation of the Entities.

33. Without the Delinquent Returns, the Plaintiff and the Trustee are unable to ascertain the Defendant's financial condition or business transactions during the period of 2021 through 2023.

34. The Defendant has failed to maintain adequate personal and business tax records for 2021, 2022, and 2023.

35. The failure to file the Delinquent Returns is a failure to keep or preserve recorded information from which Defendant's financial condition or business transactions might be ascertained.

36. The failure to file the Delinquent Returns is not justified under the circumstances.

**B. Failure to Maintain Business Records**

**i. Failure to account for $20,434.28 in ATM withdrawals from personal and Entities' business bank accounts within the year of filing**

37. While operating the Entities, the Defendant undisputedly comingled personal and business transactions within the Defendant's personal accounts and Entities' business accounts.

38. Upon review of all the Defendant's personal and business bank statements provided to Plaintiff, Plaintiff estimates approximately $20,434.28 in ATM withdrawals were made from all of Defendant's personal and business accounts within the year of filing the Main Case.

39. At the Rule 2004 examination on October 24, 2024, Plaintiff asked Defendant about the withdrawals to which Defendant attributed most of the withdrawals to be cash payments to certain drivers the Defendant would employ.

40. When Plaintiff asked if Defendant had any records to support that the cash withdrawals were paid to drivers, the Defendant testified he could not provide any documentation and that he was the only one who would have access to provide such records.

41. The failure to account for the approximately $20,434.28 in ATM withdrawals from Defendant's accounts is a failure to keep or preserve records from which Defendant's financial condition or business transactions might be ascertained.

**C. Failure to Produce Records of Post-Petition Cash-Only Lifestyle**

**i. Failure to produce accounting records of $179,000.00 in post-petition loan proceeds he received to support his living expenses**

42. According to the Defendant's testimony at the 2004 examination on October 24, 2024, the Defendant does not maintain any bank account since at least January 1, 2024, and that he exclusively uses cash to pay for living expenses.

43. When asked where he obtains such cash to support his living expenses, Defendant testified that he receives $2,800 a month in Social Security income ("SSI Payments") and obtained post-petition personal loans from various third parties of approximately $179,000.00 ("Post-Petition Loan Proceeds").

44. When asked how he receives the SSI Payments with no bank account, the Defendant testified the SSI Payments get deposited into a non-debtor bank account owned by a company called Pegasus Manor, LLC ("Pegasus").

45. Upon information and belief, Pegasus is owned by Betty C. Ferrero, the Defendant's girlfriend ("Ferrero").

46. Defendant's testimony is that each month when SSI Payments are deposited, he is provided the cash by Ferrero.

47. Defendant maintains he does not have signatory authority over the Pegasus Account and is entirely reliant on Ferrero on providing him the monthly SSI Payments.

48. As for the Post-Petition Loan Proceeds, Defendant provided Plaintiff a list of personal

loans Defendant obtained after the filing of the petition.

49. The Post-Petition Loan Proceeds received were from the following entities or individuals:

      i.    RT Royal Investments - $131,500.00 ("RT");

     ii.    Be Happy Nomad Travel LLC/ Daphene Andrew - $25,000.00 ("Nomad");

    iii.    Sam Musgrave - $5,000.00; and

    iv.    Robert Thomas - $17,500.00.

50. The loan proceeds received from RT, Nomad, and Robert Thomas were each transferred via wire(s) to one of Pegasus' checking accounts at an unknown date.

51. Of the Post-Petition Loan Proceeds, Defendant testified that $45,000.00 was used for Defendant's living expenses and $14,000.00 was used on "miscellaneous" items.

52. To date, the Plaintiff, while being provided with promissory notes to some of these post-petition loans, has not been provided an accounting for the Defendant's living and "miscellaneous" expenses.

53. Plaintiff and Trustee have requested from Defendant via the 2004 Notices and 2004 Cross Notice, the bank accounts which the Post-Petition Loan Proceeds were deposited to which the Defendant has objected to within the Response (Doc. Nos. 83 and 84).

54. The failure to provide records to account for the Post-Petition Loan Proceeds is a failure to maintain records from which the Defendant's financial condition might be ascertained.

**D.  Failure to Produce Documents to the Trustee**

    **i.  Failure Produce Delinquent Returns to the Trustee**

55. Upon information and belief, the Defendant has failed to file the Delinquent Returns.

56. Pursuant to 11 U.S.C. §521(e)(2)(A)(i), the Debtor shall provide the Trustee prior to

the first meeting of creditors, a copy of the Federal income tax return for the most recent tax year ending immediately before the commencement of the case and for which federal income tax was filed.  11 U.S.C. § 521(e)(2)(A)(i).

57.  Upon information and belief, the Trustee has informally requested the Delinquent Returns as the routine required documents that need to be provided by all debtors prior to the meeting of creditors.

58.  Upon information and belief, the Trustee was not provided the Delinquent Returns prior to the meeting of creditors.

59.  The Trustee formally requested the Delinquent Returns within the 2004 Cross Notices.

60.  Upon information and belief, to date, the Trustee has not been provided the Delinquent Returns due to the Defendant not filing them with the IRS.

61.  Upon information and belief, the IRS has indicated in Proof-of-Claim #23 that the Defendant has not filed tax returns for 2022 and possibly 2018 (POC# 23).

62.  The Defendant, by failing to file the Delinquent Returns, has knowingly and fraudulently withheld such information from the Trustee that would contain the Defendant's business dealings from 2021 through 2023 that relate to the Defendant's financial affairs.

63.  To the extent the Defendant has an interest in the Pegasus account in which the Defendant's SSI Payments and the Post-Petition Loan Proceeds were deposited into, the Defendant has knowingly and fraudulently withheld such records from the Trustee that were requested within the Trustee's 2004 Cross Notices.

**E.  <u>Failure to Satisfactorily Explain the Loss of Assets</u>**

**i.     Failure to explain the loss of $20,434.28 in ATM withdrawals**

64.  As stated above, the Defendant withdrew approximately $20,434.28 in ATM

withdrawals from his personal and business accounts within the year of filing the Main Case.

65.   The Defendant testified at the Rule 2004 examination on October 24, 2024, that the cash withdrawals are attributed to drivers he employed and paid cash to.

66.   The Defendant testified he does not have records to support any cash payments to the alleged drivers.

67.   The lack of records showing cash payments to employees or contract drivers is a failure to satisfactorily explain the loss of $20,434.28 in ATM withdrawals within the year of filing the Main Case.

68.   The Defendant's bank statements show a dissipation of $20,434.28 in cash being withdrawn and Defendant has no supporting documentation for this loss of assets.

69.   The Defendant has failed to explain satisfactorily, before determination of a denial of discharge, the loss of the $20,434.28 in ATM withdrawals.

**ii.     Failure to satisfactorily explain post-petition cash-only lifestyle**

70.   As explained above, the Defendant testified that he does not maintain any bank accounts since at least January 1, 2024, and that he uses cash to pay for his living and personal expenses.

71.   After filing the Main Case, the Defendant obtained the Post-Petition Loan Proceeds that were wired to accounts owned by Pegasus at unknown dates.

72.   $59,000.00 of the Post-Petition Loan Proceeds was used by the Defendant for living and "miscellaneous" expenses.

73.   To date, the Defendant has failed to provide any supporting documentation that accounts for the Post-Petition Loan Proceeds used on living and "miscellaneous" expenses.

74.   The failure to account for these expenses is a failure to satisfactorily explain the

deficiency of assets to meet Defendant's liabilities.

**F. <u>False Oaths Within Schedules and While Under Oath at Rule 2004 Examination</u>**

    **i.**     **Failure to disclose Phelps Visionary, LLC in schedules and inconsistent testimony**

75. The Defendant signed amended Schedule A/B under penalty of perjury that he had 100% ownership interests in the Entities on the Petition Date (Doc. No. 18 at 6 and 10).

76. On question # 27 of the Statement of Financial Affairs ("<u>SOFA</u>"), Defendant, also under penalty of perjury, listed the Entities as businesses the Defendant had an ownership interest in within the four years prior to the Petition Date (Doc. No. 10 at 7 and 8).

77. On SOFA # 27, Defendant indicated that Father, Son, & Daughter LLC existed from December 15, 2015, through the Petition Date and that it "[d]id not conduct business." (*Id*. at 7).

78. On the Petition Date however, the Defendant owned an interest in an additional business called Phelps Visionary, LLC ("<u>PV</u>"), that was not disclosed in the amended Schedule A/B or SOFA.

79. According to the Florida Secretary of State, Division of Corporations, Sunbiz website, PV was formed within the State of Florida on December 1, 2021, and became administratively dissolved on September 27, 2024.

80. At the meeting of creditors on February 1, 2024, the Trustee informed the Defendant that PV was not listed.

81. When asked by the Trustee at the meeting of creditors why PV was not listed, Defendant testified he was not aware it was still active at the time.

82. Defendant also testified that PV was formed but did not operate.

83. At the Rule 2004 examination held on March 26, 2024, Plaintiff informed Defendant

that PV remained active on Sunbiz.org and that it was not listed on the Schedules or SOFA.

84.   When asked by Plaintiff why PV was not listed, Defendant again testified that he was unaware it was active until Plaintiff brought it up at the Rule 2004 examination despite the Trustee informing Defendant of PV's nondisclosure at the meeting of creditors held on February 1, 2024.

85.   PV was registered as an active business with the State of Florida on the Petition Date.

86.   PV was not disclosed on amended Schedules A/B.

87.   PV was not disclosed on SOFA # 27.

88.   To date, no amendments to disclose Defendant's interest in PV on the Petition Date have been made.

89.   The Defendant knowingly and fraudulently made a false oath by failing to disclose PV on amended Schedules A/B and SOFA.

90.   To the extent the Defendant did not list PV because it was an entity that was not in operation (despite it being active on Sunbiz), the Defendant knowingly and fraudulently made a false oath by failing to disclose PV since Defendant also listed Father, Son, & Daughter, LLC, an entity that "did not conduct business" as stated on SOFA (Doc. No. 10 at 7).

91.   The Defendant provided false testimony while under oath at the Rule 2004 examination that took place on March 26, 2024, when he testified that he was unaware that PV was still active despite being informed of its status by the Trustee at the meeting of creditors on February 1, 2024, that PV was not disclosed on the schedules or SOFA.

ii.   **False oaths regarding tax returns**

92.   Plaintiff has held three Rule 2004 examinations of the Defendant where Defendant was placed under oath by a duly authorized court reporter.

93.   At each examination, the Plaintiff inquired as to the status of the Delinquent Returns.

94.   At the examination that occurred on April 23, 2024, when Plaintiff asked when the Delinquent Returns would be filed, Defendant affirmatively testified that they would be filed within "the next few weeks."

95.   At the Rule 2004 examination that occurred on October 24, 2024, Plaintiff asked Defendant whether the Delinquent Returns were filed as testified at the previous examination.  The Defendant testified that he did not filed them and provided no indication as to when the Delinquent Returns would be filed.

96.   The Defendant knowingly and fraudulently provided false testimony at the Rule 2004 examination on April 23, 2024, that the Delinquent Returns would be filed within the "next few weeks" as he did not file them by the time of the Rule 2004 examination held on October 24, 2024.

97.   To date, the Plaintiff has not been provided any copies of the Delinquent Returns.

98.   Upon information and belief, the Delinquent Returns have not been filed.

### G.   Failure to Complete Debtor Financial Management Education Course

#### i.   No certificate of completion of required education course filed

99.   On February 29, 2024, the Clerk of the Court filed a Notice of Requirement to File a Statement of Completion of Course in Personal Financial Management ("Debtor Education Requirement Notice") (Doc. No. 35).

100. The Debtor Education Requirement Notice states that "[i]n order to receive as discharge, the [Defendant] must complete an instructional course in personal financial management, as described in 11 U.S.C. § 111. The [Defendant] has not filed the [certification]." (*Id*.).  The Debtor Education Requirement Notice further provides that the case may be closed without an entry of a discharge if the Defendant does not file the required certification within 60 days after the first date set for the meeting of creditors.  (*Id*.).

101. As of December 30, 2024, the Defendant failed to file the Certification About a Financial Management Course (Official Form 423) ("Debtor Education Certificate"), as described in 11 U.S.C. § 111.  It has been over 60 days since the first date set for the meeting of creditors.

102. The Defendant is required to obtain the Debtor Education Certificate as the United States Trustee has not issued a waiver of this requirement for individuals residing within the Middle District of Florida and this Court has not determined the Defendant to be a person described in 11 U.S.C. § 109(h)(4).

103. Failure to file the Debtor Education Certificate results in a denial of discharge.  11 U.S.C. 727(a)(11).

104. Accordingly, upon information and belief, it appears the Defendant has failed to take the appropriate financial management course.[2]

### V.      CAUSES OF ACTION SEEKING DENIAL OF DISCHARGE

#### COUNT I
#### Objection to Discharge Pursuant to 11 U.S.C. § 727(a)(3)
#### [Defendant's Failure to Keep or Preserve Records]

105. The United States Trustee realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 104, as if fully rewritten and restated at length.

106. This is an action objecting to the discharge of the Defendant pursuant to 11 U.S.C. § 727(a)(3), Rules 4004(d) and 7001(4), Federal Rules of Bankruptcy Procedure.

107. Denial of Defendant's discharge is appropriate upon a showing, by a preponderance of the evidence that the Defendant "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which

---

[2] On March 19, 2024, the Court entered an order withholding discharge for Defendant's failure to file the Debtor Education Certificate (Doc. No. 49) and then subsequently entered a text-only Order Vacating the Order Withholding Discharge (Doc. No. 50).  It is unclear what the Court relied on to vacate the Order Withholding Discharge as the record does not reflect a Debtor Education Certificate has been filed by the Defendant.

the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case" under 11 U.S.C. § 727(a)(3).

108. Defendant failed to keep or preserve his personal and business records when he failed to turn over the financial records, including but not limited to the Delinquent Returns, as requested by the Plaintiff and the Trustee via the 2004 Notices and 2004 Cross Notices respectively.

109. Defendant has testified under oath that he has not filed the Delinquent Returns.

110. The failure to file the Delinquent Returns is not justified under the circumstances.

111. The Delinquent Returns are records that would contain information from which the Defendant's financial condition or business transactions might be ascertained.

112. Defendant failed to keep or preserve his personal and business records when he failed to provide an accounting of the $20,434.28 in ATM withdrawals he made from Defendant's personal and business accounts within the year of the Petition Date.

113. The Defendant has testified he does not have records to account for the disposition of $20,434.28 in ATM withdrawals.

114. The failure to keep records of the cash transactions accounting for the $20,434.28 in ATM withdrawals is not justified under the circumstances.

115. The accounting of cash transactions are records that would contain information from which the Defendant's financial condition or business transactions might be ascertained.

116. The Defendant failed to keep or preserve his personal and business records when he failed to turn over the financial records, including but not limited to the accounting of the Post Petition Loan Proceeds used on living and miscellaneous expenses, as requested by the Plaintiff and the Trustee via the 2004 Notices and 2004 Cross Notices respectively.

117. Of the Post-Petition Loan Proceeds, Defendant testified that $45,000.00 was used for

Defendant's living expenses and $14,000.00 was used on "miscellaneous" items.

118. To date, the Plaintiff, while being provided with promissory notes to some of these post-petition loans, has not been provided an accounting for the Defendant's living and "miscellaneous" expenses.

119. The failure to provide records to account for the disposition of the Post-Petition Loan Proceeds used on living and miscellaneous expenses is not justified under the circumstances.

120. An accounting of the Post-Petition Loan Proceeds used on living and miscellaneous expenses are records that would contain information from which the Defendant's financial condition or business transactions might be ascertained.

121. Said actions constitute grounds for denial of discharge under 11 U.S.C. § 727(a)(3).

WHEREFORE, the Court should deny Defendant's discharge pursuant to 11 U.S.C. § 727(a)(3) and take such other action as the Court deems proper.

## COUNT II
### Objection to Discharge Pursuant to 11 U.S.C. § 727(a)(4)(A)
### [False Oaths or Accounts]

122. The United States Trustee realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 104, as if fully rewritten and restated at length.

123. This is an action objecting to the discharge of the Defendant pursuant to 11 U.S.C. § 727(a)(4)(A), Rules 4004(d) and 7001(4), Federal Rules of Bankruptcy Procedure.

124. Denial of Defendant's discharge is appropriate upon a showing, by a preponderance of the evidence, that Defendant "knowingly and fraudulently, in or in connection with the case—made a false oath or account" under 11 U.S.C. § 727(a)(4)(A).

125. The nondisclosure of PV, as described in paragraphs 74 through 97, constitutes false

oath or account made knowingly and fraudulently in connection with the Main Case.

126. Defendant made statements under oath when he signed his Petition, original Schedules, the SOFA, and the amended Schedule A/B.

127. Defendant's amended schedules and statements were affirmatively false and/or contained material omissions when he failed to disclose his ownership interest in PV on the Petition Date within amended Schedules A/B and relevant portions of the SOFA.

128. To the extent the Defendant did not disclose PV because it was an entity that was not in operation (despite it being active on Sunbiz), the Defendant knowingly and fraudulently made a false oath on his amened Schedules A/B and SOFA by failing to disclose PV since Defendant disclosed Father, Son, & Daughter, LLC, an entity that was not operating and was active with the State of Florida.

129. Defendant was placed under oath at the Rule 2004 examination on March 26, 2024, during which he testified he was not aware PV was still an active business with the State of Florida until Plaintiff informed him that it was active during the examination.

130. Defendant's testimony at the Rule 2004 examination on March 26, 2024, was affirmatively false as he was informed previously by the Trustee that PV was not disclosed within the Schedules during the meeting of creditors that took place on February 1, 2024.

131. Defendant was placed under oath at the Rule 2004 examination on April 23, 2024, during which he testified that the Delinquent Returns would be filed within the "next few weeks" of the 2004 examination.

132. Defendant's testimony during the Rule 2004 examination on April 23, 2024, was affirmatively false as Defendant did not file the Delinquent Returns as he testified he would.

133. Defendant testified at a subsequent Rule 2004 examination that occurred on October

24, 2024, that the Delinquent Returns were still not filed.

134. Upon information and belief, the Delinquent Returns remain unfiled.

135. Such false oaths and false testimony was made by the Defendant in connection with the Main Case.

136. Said actions constitute grounds for denial of discharge under 11 U.S.C. § 727(a)(4)(A).

WHEREFORE, the Court should deny Defendant's discharge pursuant to 11 U.S.C. § 727(a)(4)(A) and take such other action as the Court deems proper.

## COUNT III
### Objection to Discharge Pursuant to 11 U.S.C. § 727(a)(4)(D)
### [Withholding of Documents Requested by Trustee]

137. The United States Trustee realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 104, as if fully rewritten and restated at length.

138. This is an action objecting to the discharge of the Defendant pursuant to 11 U.S.C. § 727(a)(4)(D), Rules 4004(d) and 7001(4), Federal Rules of Bankruptcy Procedure.

139. Denial of Defendant's discharge is appropriate upon a showing, by a preponderance of the evidence that the Defendant, "knowingly and fraudulently, in or in connection with the case—withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs" under 11 U.S.C. § 727(a)(4)(D).

140. Trustee is an officer of the estate entitled to possession under Title 11 of any recorded information, including books and records that relate to the business or financial affairs of the Defendant, including personal and business tax returns.

141. The Defendant is statutorily required to provide the Trustee a copy of Federal tax

returns for the most recent tax year ending immediately before the commencement of the case, prior to the initial meeting of creditors.  11 U.S.C. § 521(e)(2)(A)(i).

142. Upon information and belief, the Defendant did not provide the Trustee a copy of any of the Delinquent Returns prior to the initial meeting of creditors since the Delinquent Returns were not filed.

143. The Trustee formally requested copies of the Delinquent Returns via the Trustee's 2004 Cross Notices, which incorporated Plaintiff's request for the Delinquent Returns.

144. Upon information and belief, the Defendant has not provided the Trustee with copies of the Delinquent Returns in accordance with the Trustee's 2004 Cross Notices.

145. The Defendant has demonstrated a conscious disregard in (i) complying the Tax Code by failing to file individual and business tax returns for years 2021, 2022, and 2023[3]; (ii) complying with the Bankruptcy Code by failing to provide the Trustee with any of the Delinquent Returns prior to the initial meeting of creditors; and (iii) complying with the formal requests for the Delinquent Returns made by the Trustee.

146. The Defendant, by failing to file the Delinquent Returns, has knowingly and fraudulently withheld such information from the Trustee that would contain the Defendant's business dealings from 2021 through 2023 that relate to the Defendant's financial affairs.

147. To the extent the Defendant has an interest in the Pegasus account in which the Defendant's SSI Payments and the Post-Petition Loan Proceeds were deposited into, the Defendant has knowingly and fraudulently withheld such records from the Trustee that were requested within the Trustee's 2004 Cross Notices.

---

[3] To the extent the Defendant has not sought any extension thereof and is not automatically extended to file 2023 tax returns due to certain natural disasters that impacted central Florida in 2023 and 2024.

148. Said actions constitute grounds for denial of discharge under 11 U.S.C. § 727(a)(4)(D).

WHEREFORE, the Court should deny Defendant's discharge pursuant to 11 U.S.C. § 727(a)(4)(D) and take such other action as the Court deems proper.

<u>**COUNT IV**</u>
**Objection to Discharge Pursuant to 11 U.S.C. § 727(a)(5)**
**[Failure to satisfactorily explain the loss or deficiency of assets]**

149. The United States Trustee realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 104, as if fully rewritten and restated at length.

150. This is an action objecting to the discharge of the Defendant pursuant to 11 U.S.C. § 727(a)(5), Rules 4004(d) and 7001(4), Federal Rules of Bankruptcy Procedure.

151. Denial of Defendant's discharge is appropriate upon a showing, by a preponderance of the evidence that the Defendant, "failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities" under 11 U.S.C. § 727(a)(5).

152. The Defendant testified at the Rule 2004 exam that occurred on October 24, 2024, that he did not have any records to account for the $20,434.38 in ATM withdrawals that were made from Defendant's personal and business accounts within the year of the Petition Date.

153. Defendant's bank statements reflect the loss of $20,434.38 in assets within the year of the Petition Date.

154. Defendant's failure to provide Plaintiff an accounting of the $20,434.38 in ATM withdrawals is a failure to satisfactorily explain the loss of assets.

155. The Defendant testified at the Rule 2004 exam that after filing the Main Case, the Defendant obtained the Post-Petition Loan Proceeds that were wired to accounts owned by Pegasus

at unknown dates.

156. $59,000.00 of the Post-Petition Loan Proceeds was used by the Defendant for living and "miscellaneous" expenses.

157. To date, the Defendant has failed to provide any supporting documentation that accounts for the Post-Petition Loan Proceeds used on living and "miscellaneous" expenses.

158. The failure to account for these expenses is a failure to satisfactorily explain the deficiency of assets to meet Defendant's liabilities.

159. The Defendant's denial of discharge has yet to be determined by this Court.

160. Said actions constitute grounds for denial of discharge under 11 U.S.C. § 727(a)(5).

WHEREFORE, the Court should deny Defendant's discharge pursuant to 11 U.S.C. § 727(a)(5) and take such other action as the Court deems proper.

<u>**COUNT V**</u>
**Objection to Discharge Pursuant to 11 U.S.C. § 727(a)(11)**
**[Failure to complete Debtor Education Course]**

161. The United States Trustee realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 104, as if fully rewritten and restated at length.

162. This is an action objecting to the discharge of the Defendant pursuant to 11 U.S.C. § 727(a)(11), Rules 4004(d) and 7001(4), Federal Rules of Bankruptcy Procedure.

163. Denial of Defendant's discharge is appropriate upon a showing, by a preponderance of the evidence that the Defendant, after filing the petition "failed to complete an instructional course concerning personal financial management described in section 111, [unless the Defendant] is a person described in 11 U.S.C. §109(h)(4) or who resides in a district for which the United States Trustee . . . determines that the approved instructional courses are not adequate to service

the additional individuals who would otherwise be required to complete such instructional courses . . . ." under 11 U.S.C. § 727(a)(11).

164. On February 29, 2024, the Clerk of the Court issued the Debtor Education Requirement Notice (Doc. No. 35).

165. The Debtor Education Requirement Notice states that "[i]n order to receive as discharge, the [Defendant] must complete an instructional course in personal financial management, as described in 11 U.S.C. § 111. The [Defendant] has not filed the [certification]." (*Id.*).

166. The Debtor Education Requirement Notice further provides that the case may be closed without an entry of a discharge if the Defendant does not file the required certification within 60 days after the first date set for the meeting of creditors.  (*Id.*).

167. As of December 30, 2024, the Defendant failed to file the Debtor Education Certificate, and it has been over 60 days since the first date set for the meeting of creditors.

168. The Defendant is required to obtain the Debtor Education Certificate as the United States Trustee has not issued a waiver of this requirement for individuals residing within the Middle District of Florida and this Court has not determined the Defendant to be a person described in 11 U.S.C. § 109(h)(4).

169. Upon information and belief, it appears the Defendant has failed to complete the Debtor Education Course.

170. Said actions constitute grounds for denial of discharge under 11 U.S.C. § 727(a)(11).

WHEREFORE, the Court should deny Defendant's discharge pursuant to 11 U.S.C. § 727(a)(11) and take such other action as the Court deems proper.

## VI.  RELIEF REQUESTED AND RESERVATION OF RIGHTS

WHEREFORE, the United States Trustee respectfully requests that the Court (i) enter a final judgment in favor of the United States Trustee and against Defendant, Stephen L. Phelps, denying Defendant's discharge pursuant to 11 U.S.C. §§ 727(a)(3), (a)(4)(A), (a)(4)(D), (a)(5), and (a)(11); and (ii) grant other such relief that the Court deems appropriate.

The United States Trustee reserves her right to amend this complaint to raise additional facts and assert additional causes of action based on information obtained during discovery.


Dated:    December 30, 2024                     Respectfully submitted,

                                                MARY IDA TOWNSON,
                                                UNITED STATES TRUSTEE FOR REGION 21

                                                /s/ *Bryan Edgar Buenaventura*
                                                Bryan E. Buenaventura, Trial Attorney
                                                United States Department of Justice
                                                Office of the United States Trustee
                                                Florida Bar No.: 1022175
                                                Timberlake Federal Annex Building
                                                501 East Polk Street, Suite 1200
                                                Tampa, FL 33602
                                                Telephone No.: (813)228-2174
                                                Bryan.Buenaventura@usdoj.gov