UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov



In re:

Stephen L. Phelps,

    Debtor.
_____/

Case No.: 6:23-bk-05281-TPG

Chapter 7

Mary Ida Townson, United States Trustee
for Region 21,

    Plaintiff,
v.

Stephen L. Phelps,

    Defendant.
_____/

Adv. Pro. No.: 6:24-ap-138-TPG

## VERIFIED STATEMENT OF BRYAN BUENAVENTURA IN SUPPORT OF UNITED STATES TRUSTEE'S MOTION FOR FINAL JUDGMENT BY DEFAULT

    The United States Trustee for Region 21, Mary Ida Townson ("Plaintiff"), by and through her counsel, hereby submits this verified statement in support of the Plaintiff's Motion for Final Judgment by Default ("Motion") against Stephen L. Phelps ("Defendant"). In support of the Motion, the Plaintiff represents that:

    1.    I, Bryan E. Buenaventura, am a trial attorney with the Office of the United States Trustee, am over the age of 18 years, and am authorized to make this verified statement on the Plaintiff's behalf.

    2.    To the best of my knowledge, the Defendant, Stephen L. Phelps, is over the age of 18 years, and is not incompetent.

    3.    To the best of my knowledge, the Defendant is not currently on active duty,

nor has the Defendant been on active duty since this adversary proceeding, or the underlying bankruptcy action, commenced (Adv. Pro. Doc. No. 6).

4. The Defendant filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code along with his schedules, statement of financial affairs, and other required documents ("Petition") initiating the underlying bankruptcy action (Case No. 6:23-bk-05281-TPG) on December 15, 2023 (the "Petition Date").

5. The Defendant personally signed the declarations in his Petition under penalty of perjury that the information therein was true and correct. (Doc. Nos. 9, 10, 11, 18, 19, and 21).[1]

6. On December 18, 2023, Richard B. Webber was appointed as the interim chapter 7 trustee (the "Trustee") and continues to serve in that capacity (Doc. No. 5).

7. The Plaintiff examined the Defendant under oath pursuant to Federal Rules of Bankruptcy Procedure 2004 ("Rule 2004") on March 26, 2024, April 23, 2024, and October 24, 2024 (Doc. Nos. 45 and 92) ("2004 Notices").

8. The Trustee crossed-noticed Plaintiff's 2004 Notices and was an active participant at each examination (Doc. Nos. 47 and 97) ("2004 Cross Notices"). The Trustee made an additional request for specific documents of the Defendant under Rule 2004 (Doc. No. 72).

9. On July 5, 2024, Defendant filed a written responses to Plaintiff's 2004 notice (Doc. No. 84) ("Response") and Trustee's 2004 Cross Notices (Doc. No. 83).

---

[1] Unless otherwise stated, docket numbers referenced herein shall refer to entries within Defendant's main bankruptcy case captioned as *In re: Phelps* Case No.: 6:23-bk-05281-TPG.

**A. Defendant's Failure to Maintain Adequate Personal and Business Tax Records for 2021, 2022, and 2023**

    **i. 2004 Examination Testimony**

10. Within Plaintiff's 2004 Notices, Plaintiff requested, among other things, copies of Defendant's delinquent 2021, 2022, and 2023 individual and business tax returns ("Delinquent Returns") (Doc. Nos. 45 and 92).

11. The Trustee, within the 2004 Cross Notices, incorporated the same requests made by Plaintiff, including requests for the Delinquent Returns, by requesting copies of all documents produced to Plaintiff (Doc. Nos. 47 and 97).

12. Within the Response, Defendant affirmatively states that "[t]he [Defendant] has not filed tax returns for 2021, 2022, and 2023." (Doc. No. 84 at 4).

13. During Defendant's 2004 examination held by Plaintiff on March 26, 2024, Plaintiff asked Defendant if he had filed Delinquent Returns and Defendant confirmed he did not and did not have any plans to file them.

14. During Defendant's second 2004 examination held on April 23, 2024, Plaintiff asked Defendant regarding the status of the Delinquent Returns to which Defendant stated that they would be filed within "the next few weeks."

15. At the Defendant's 2004 examination held on October 24, 2024, Defendant confirmed the Delinquent Returns were not filed.

16. To date, the Defendant has not produced copies of the Delinquent Returns to the Plaintiff.

17. Upon information and belief, the Defendant has not produced the Delinquent Returns to the Trustee.

18. Upon information and belief, the Defendant has not filed the Delinquent Returns with the Internal Revenue Service.

**ii. Defendant Entities**

19. On Schedules A/B, the Defendant lists the following entities the Defendant had an ownership interest in on the Petition Date:

> 19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture
> ☐ No
> ☑ Yes. Give specific information about them...........
>
> | Name of entity: | % of ownership: | |
> |---|---|---|
> | Jack's Garage, LLC | 100 % | $ 0.00 |
> | FSD Hot Rod Ranch, LLC | 100 % | $ 0.00 |
> | Father, Son, & Daughter, LLC | 100 % | $ 0.00 |

(Doc. No. 18 at 6) (the "Entities").

20. Jack's Garage, LLC, a Florida Limited Liability Company, was purchased by the Defendant in late 2022. According to the Defendant, this entity repaired cars that Defendant bought and sold.

21. FSD Hot Rod Ranch, LLC ("FSD"), a Florida Limited Liability Company, was owned by the Defendant since March 1, 2021, and became administratively dissolved on September 27, 2024. According to the Defendant, this entity bought and sold classic cars from and to antique automobile enthusiasts and collectors.

22. Father, Son, Daughter, LLC, a Florida Limited Liability Company, was owned by the Defendant since December 22, 2015, and became administratively dissolved on September 27, 2024.

23. The Defendant operated FSD and Father, Son, Daughter, LLC in 2021, 2022, and 2023.

24. The Defendant operated Jack's Garage, LLC for a portion of 2022 and 2023.

25. The Defendant has not filed tax returns for the Entities for the portions they

were in operation for 2021, 2022, and 2023.

26. The Defendant's primary means of income and business revenue for 2021, 2022, and 2023 was the operation of the Entities.

27. Without the Delinquent Returns, the Plaintiff and the Trustee are unable to ascertain the Defendant's financial condition or business transactions during the period of 2021 through 2023.

28. The Defendant has failed to maintain adequate personal and business tax records for 2021, 2022, and 2023.

29. The failure to file the Delinquent Returns is a failure to keep or preserve recorded information from which Defendant's financial condition or business transactions might be ascertained.

30. The failure to file the Delinquent Returns is not justified under the circumstances.

**B.  Failure to Maintain Business Records**

**i. Failure to account for $20,434.28 in ATM withdrawals from personal and Entities' business bank accounts within the year of filing**

31. While operating the Entities, the Defendant undisputedly comingled personal and business transactions within the Defendant's personal accounts and Entities' business accounts.

32. Upon review of all the Defendant's personal and business bank statements provided to Plaintiff, Plaintiff estimates approximately $20,434.28 in ATM withdrawals were made from all of Defendant's personal and business accounts within the year of filing the Main Case.

33. At the Rule 2004 examination on October 24, 2024, Plaintiff asked Defendant about the withdrawals to which Defendant attributed most of the withdrawals to be cash payments to certain drivers the Defendant would employ.

34. When Plaintiff asked if Defendant had any records to support that the cash withdrawals were paid to drivers, the Defendant testified he could not provide any documentation and that he was the only one who would have access to provide such records.

35. The failure to account for the approximately $20,434.28 in ATM withdrawals from Defendant's accounts is a failure to keep or preserve records from which Defendant's financial condition or business transactions might be ascertained.

**C.   Failure to Produce Records of Post-Petition Cash-Only Lifestyle**

**i. Failure to produce accounting records of $179,000.00 in post-petition loan proceeds he received to support his living expenses**

36. According to the Defendant's testimony at the 2004 examination on October 24, 2024, the Defendant does not maintain any bank account since at least January 1, 2024, and that he exclusively uses cash to pay for living expenses.

37. When asked where he obtains such cash to support his living expenses, Defendant testified that he receives $2,800 a month in Social Security income ("SSI Payments") and obtained post-petition personal loans from various third parties of approximately $179,000.00 ("Post-Petition Loan Proceeds").

38. When asked how he receives the SSI Payments with no bank account, the Defendant testified the SSI Payments get deposited into a non-debtor bank account owned by a company called Pegasus Manor, LLC ("Pegasus").

39. Upon information and belief, Pegasus is owned by Betty C. Ferrero, the

Defendant's girlfriend ("Ferrero").

40. Defendant's testimony is that each month when SSI Payments are deposited, he is provided the cash by Ferrero.

41. Defendant maintains he does not have signatory authority over the Pegasus Account and is entirely reliant on Ferrero on providing him the monthly SSI Payments.

42. As for the Post-Petition Loan Proceeds, Defendant provided Plaintiff a list of personal loans Defendant obtained after the filing of the petition.

43. The Post-Petition Loan Proceeds received were from the following entities or individuals:

    a. RT Royal Investments - $131,500.00 ("RT");

    b. Be Happy Nomad Travel LLC/ Daphene Andrew - $25,000.00 ("Nomad");

    c. Sam Musgrave - $5,000.00; and

    d. Robert Thomas - $17,500.00.

44. The loan proceeds received from RT, Nomad, and Robert Thomas were each transferred via wire(s) to one of Pegasus' checking accounts at an unknown date.

45. Of the Post-Petition Loan Proceeds, Defendant testified that $45,000.00 was used for Defendant's living expenses and $14,000.00 was used on "miscellaneous" items.

46. To date, the Plaintiff, while being provided with promissory notes to some of these post-petition loans, has not been provided an accounting for the Defendant's living and "miscellaneous" expenses.

47. Plaintiff and Trustee have requested from Defendant via the 2004 Notices and 2004 Cross Notice, the bank accounts which the Post-Petition Loan Proceeds were deposited to which the Defendant has objected to within the Response (Doc. Nos. 83 and 84).

48. The failure to provide records to account for the Post-Petition Loan Proceeds is a failure to maintain records from which the Defendant's financial condition might be ascertained.

49. Upon information and belief, the Defendant has failed to file the Delinquent Returns.

50. Pursuant to 11 U.S.C. §521(e)(2)(A)(i), the Debtor shall provide the Trustee prior to the first meeting of creditors, a copy of the Federal income tax return for the most recent tax year ending immediately before the commencement of the case and for which federal income tax was filed. 11 U.S.C. § 521(e)(2)(A)(i).

51. Upon information and belief, the Trustee has informally requested the Delinquent Returns as the routine required documents that need to be provided by all debtors prior to the meeting of creditors.

52. Upon information and belief, the Trustee was not provided the Delinquent Returns prior to the meeting of creditors.

**D.   Failure to Produce Documents to the Trustee**

   **i. Failure Produce Delinquent Returns to the Trustee**

53. The Trustee formally requested the Delinquent Returns within the 2004 Cross Notices.

54. Upon information and belief, to date, the Trustee has not been provided the Delinquent Returns due to the Defendant not filing them with the IRS.

55. Upon information and belief, the IRS has indicated in Proof-of-Claim #23 that the Defendant has not filed tax returns for 2022 and possibly 2018 (POC# 23).

56. The Defendant, by failing to file the Delinquent Returns, has knowingly and

fraudulently withheld such information from the Trustee that would contain the Defendant's business dealings from 2021 through 2023 that relate to the Defendant's financial affairs.

57.   To the extent the Defendant has an interest in the Pegasus account in which the Defendant's SSI Payments and the Post-Petition Loan Proceeds were deposited into, the Defendant has knowingly and fraudulently withheld such records from the Trustee that were requested within the Trustee's 2004 Cross Notices.

### E.  Failure to Satisfactorily Explain the Loss of Assets

#### i. Failure to explain the loss of $20,434.28 in ATM withdrawals

58.   As stated above, the Defendant withdrew approximately $20,434.28 in ATM withdrawals from his personal and business accounts within the year of filing the Main Case.

59.   The Defendant testified at the Rule 2004 examination on October 24, 2024, that the cash withdrawals are attributed to drivers he employed and paid cash to.

60.   The Defendant testified he does not have records to support any cash payments to the alleged drivers.

61.   The lack of records showing cash payments to employees or contract drivers is a failure to satisfactorily explain the loss of $20,434.28 in ATM withdrawals within the year of filing the Main Case.

62.   The Defendant's bank statements show a dissipation of $20,434.28 in cash being withdrawn and Defendant has no supporting documentation for this loss of assets.

63.   The Defendant has failed to explain satisfactorily, before determination of a denial of discharge, the loss of the $20,434.28 in ATM withdrawals.

#### ii. Failure to satisfactorily explain post-petition cash-only lifestyle

64.   As explained above, the Defendant testified that he does not maintain any bank

accounts since at least January 1, 2024, and that he uses cash to pay for his living and personal expenses.

65. After filing the Main Case, the Defendant obtained the Post-Petition Loan Proceeds that were wired to accounts owned by Pegasus at unknown dates.

66. $59,000.00 of the Post-Petition Loan Proceeds was used by the Defendant for living and "miscellaneous" expenses.

67. To date, the Defendant has failed to provide any supporting documentation that accounts for the Post-Petition Loan Proceeds used on living and "miscellaneous" expenses.

68. The failure to account for these expenses is a failure to satisfactorily explain the deficiency of assets to meet Defendant's liabilities.

**F.  False Oaths Within Schedules and While Under Oath at Rule 2004 Examination**

**i. Failure to disclose Phelps Visionary, LLC in schedules and inconsistent testimony**

69. The Defendant signed amended Schedule A/B under penalty of perjury that he had 100% ownership interests in the Entities on the Petition Date (Doc. No. 18 at 6 and 10).

70. On question # 27 of the Statement of Financial Affairs ("SOFA"), Defendant, also under penalty of perjury, listed the Entities as businesses the Defendant had an ownership interest in within the four years prior to the Petition Date (Doc. No. 10 at 7 and 8).

71. On SOFA # 27, Defendant indicated that Father, Son, & Daughter LLC existed from December 15, 2015, through the Petition Date and that it "[d]id not conduct business." (*Id*. at 7).

72. On the Petition Date however, the Defendant owned an interest in an additional business called Phelps Visionary, LLC ("PV"), that was not disclosed in the amended

Schedule A/B or SOFA.

73. According to the Florida Secretary of State, Division of Corporations, Sunbiz website, PV was formed within the State of Florida on December 1, 2021, and became administratively dissolved on September 27, 2024.

74. At the meeting of creditors on February 1, 2024, the Trustee informed the Defendant that PV was not listed.

75. When asked by the Trustee at the meeting of creditors why PV was not listed, Defendant testified he was not aware it was still active at the time.

76. Defendant also testified that PV was formed but did not operate.

77. At the Rule 2004 examination held on March 26, 2024, Plaintiff informed Defendant that PV remained active on Sunbiz.org and that it was not listed on the Schedules or SOFA.

78. When asked by Plaintiff why PV was not listed, Defendant again testified that he was unaware it was active until Plaintiff brought it up at the Rule 2004 examination despite the Trustee informing Defendant of PV's nondisclosure at the meeting of creditors held on February 1, 2024.

79. PV was registered as an active business with the State of Florida on the Petition Date.

80. PV was not disclosed on amended Schedules A/B.

81. PV was not disclosed on SOFA # 27.

82. To date, no amendments to disclose Defendant's interest in PV on the Petition Date have been made.

83. The Defendant knowingly and fraudulently made a false oath by failing to

disclose PV on amended Schedules A/B and SOFA.

84. To the extent the Defendant did not list PV because it was an entity that was not in operation (despite it being active on Sunbiz), the Defendant knowingly and fraudulently made a false oath by failing to disclose PV since Defendant also listed Father, Son, & Daughter, LLC, an entity that "did not conduct business" as stated on SOFA (Doc. No. 10 at 7).

85. The Defendant provided false testimony while under oath at the Rule 2004 examination that took place on March 26, 2024, when he testified that he was unaware that PV was still active despite being informed of its status by the Trustee at the meeting of creditors on February 1, 2024, that PV was not disclosed on the schedules or SOFA.

**ii. False oaths regarding tax returns**

86. Plaintiff has held three Rule 2004 examinations of the Defendant where Defendant was placed under oath by a duly authorized court reporter.

87. At each examination, the Plaintiff inquired as to the status of the Delinquent Returns.

88. At the examination that occurred on April 23, 2024, when Plaintiff asked when the Delinquent Returns would be filed, Defendant affirmatively testified that they would be filed within "the next few weeks."

89. At the Rule 2004 examination that occurred on October 24, 2024, Plaintiff asked Defendant whether the Delinquent Returns were filed as testified at the previous examination. The Defendant testified that he did not filed them and provided no indication as to when the Delinquent Returns would be filed.

90. The Defendant knowingly and fraudulently provided false testimony at the

Rule 2004 examination on April 23, 2024, that the Delinquent Returns would be filed within the "next few weeks" as he did not file them by the time of the Rule 2004 examination held on October 24, 2024.

91.    To date, the Plaintiff has not been provided any copies of the Delinquent Returns.

92.    Upon information and belief, the Delinquent Returns have not been filed.

**G. Failure to Complete Debtor Financial Management Education Course**

    **i. Certificate of completion of required education course filed**

93.    On January 24, 2025, the Defendant filed the certificate of completion of required education course (Doc. No. 105).  As such, Count V of the complaint is now moot.

I declare under penalty of perjury that the above statements are true and correct to the best of my knowledge.

Dated: March 3, 2025

                                        Respectfully Submitted,

                                        MARY IDA TOWNSON
                                        United States Trustee for Region 21,
                                        Plaintiff

                                        <u>/s/ *Bryan Edgar Buenaventura*</u>
                                        Bryan E. Buenaventura, Trial Attorney
                                        United States Department of Justice
                                        Office of the United States Trustee
                                        Florida Bar No.: 1022175
                                        501 East Polk Street, Suite 1200
                                        Tampa, FL 33602
                                        Telephone No.: (813) 228-2174
                                        Bryan.Buenaventura@usdoj.gov
                                        *Attorney for Plaintiff*